**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| STERIS INSTRUMENT | ) | Case No. |
| MANAGEMENT SERVICES, INC. | ) | |
| 3316 2nd Avenue North, | ) | Judge |
| Birmingham, AL 35222 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **VERIFIED COMPLAINT FOR** |
| v. | ) | **TEMPORARY RESTRAINING ORDER,** |
| | ) | **PRELIMINARY INJUNCTION,** |
| MARC WINDHAM | ) | **PERMANENT INJUNCTION, AND** |
| 1140 Hayward Circle | ) | **OTHER RELIEF** |
| Milford, OH 45150 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| AESCULAP, INC. | ) | |
| 3773 Corporate Parkway | ) | |
| Center Valley, PA 18034 | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

NOW COMES Plaintiff, STERIS Instrument Management Services, Inc. ("STERIS," "Plaintiff," or the "Company"), by and through counsel, and for its Verified Complaint against Defendants, Marc Windham ("Windham") and Aesculap, Inc. ("Aesculap") (collectively, the "Defendants"), hereby states as follows:

**THE PARTIES**

1. STERIS Instrument Management Services, Inc., at all times pertinent hereto, was and is a Delaware corporation with its principal place of business in Birmingham, Alabama. STERIS Instrument Management Services, Inc. is a subsidiary of STERIS Corporation, an Ohio corporation with its principal place of business located in Mentor, Ohio.

2. Defendant Windham, a former STERIS employee, is an individual who, upon information and belief, resides at 1140 Hayward Circle, Milford, Ohio, 45150.

3.       Defendant Aesculap, upon information and belief, a California corporation with its principal place of business in Center Valley, Pennsylvania. Aesculap conducts business in Ohio, purposefully availing itself of the economic benefits and legal protections of Ohio.

## JURISDICTION AND VENUE

4.       STERIS brings this action pursuant to the Defend Trade Secrets Act ("DTSA") at 18 U.S.C. § 1836, *et seq*. This Court possesses subject matter jurisdiction over STERIS' trade secrets claim as it arises under the laws of the United States within the meaning of 28 U.S.C. § 1331.

5.       This Court possesses supplemental jurisdiction over STERIS' remaining claims pursuant to 28 U.S.C. § 1367.

6.       This Court possesses personal jurisdiction over Defendant Windham as he resides in a county located in this District and Division, performed services for STERIS in this District and Division, and performs services for Defendant Aesculap in this District and Division. Additionally, Windham acquired and used Plaintiff's confidential, proprietary, and/or trade secret information when working in this District and Division.

7.       This Court possesses personal jurisdiction over Defendant Aesculap as it maintains continuous and systematic contacts with this District and Division.

8.       Venue is proper pursuant to 28 U.S.C. § 1391(b), (c), and (d) as Defendant Windham resides in, performed services for STERIS, and is providing competitive services for Defendant Aesculap in this District and Division.

9.       Venue is further proper pursuant to 28 U.S.C. § 1391(b) as STERIS and all Defendants have continuous and systematic contacts with this District and Division and a substantial part of the events or omissions giving rise to the claims occurred in this District and Division.

2

## FACTUAL ALLEGATIONS

10.     STERIS is a leading provider of infection prevention and other procedural products and services, including the sale and servicing of surgical and medical instruments and devices.

11.     Defendant Aesculap is a direct competitor of STERIS, particularly in the business of the sale and servicing of surgical and medical instruments and devices.

12.     Spectrum Surgical Instruments Corporation f/k/a Spectrum Surgical Supplies Corporation ("Spectrum"), was duly organized under the laws of the State of Ohio in October 1982.

13.     STERIS Corporation acquired Spectrum in October 2012.

14.     Integrated Medical Systems International, Inc., ("IMS"), a subsidiary of STERIS Corporation, was incorporated under the laws of the state of Delaware in March 2001.

15.     Spectrum merged into IMS, effective January 2015.

16.     IMS became known as STERIS Instrument Management Services, Inc., effective December 2017.

### Defendant Marc Windham

17.     On or about February 11, 2011, Spectrum offered Windham a position as a Sales Support Representative with an anticipated start date of February 28, 2011. (Ex. 1, Windham Spectrum Offer Letter.)

18.     The offer letter informed Windham that the offer was contingent upon his completion of the Company's Confidentiality and Non-Competition Agreement.  (*Id.*)

19.     On or about February 21, 2011, as a condition of his employment, Windham executed a Confidentiality and Non-Competition Agreement with Spectrum (the "Agreement") in which Windham agreed to certain restrictive covenants and post-employment obligations, including, but not limited to, non-disclosure of the Company's proprietary information, return of

the same upon separation, non-solicitation of customers, vendors, and/or employees for a period of one year following separation, and non-competition for a period of one year following separation. A true and accurate copy of the Agreement is attached as Exhibit 2.

20.     The Agreement also indicates that "[t]he rights and obligations of the parties under this Agreement shall insure [*sic*] to the benefit of and shall [be] binding upon their heirs, executors, administrators, legal representatives, successors and assigns."  (*Id.*)

21.     Following STERIS Corporation's acquisition of Spectrum in 2012, its merger into IMS in 2015, and name change in 2017, Windham continued his employment in the position of Account Manager subject to the terms of the Agreement.

22.     As an Account Manager with STERIS, Windham's territory encompassed Cincinnati and Dayton, Ohio, Northern Kentucky, and Southeastern Indiana.

23.     As an Account Manager with STERIS, Windham had extensive access to highly valuable, confidential and proprietary information, including, but not limited to, customer contact information, supplier and vendor information, product specifications, repair and servicing techniques, pricing information, strategic planning and data, and market performance. This information is confidential and proprietary, is not publicly known, has been generated and cultivated over many years, and gives STERIS a substantial competitive advantage over its competitors.

24.     STERIS has engaged in reasonable efforts to preserve the secrecy of its confidential and proprietary information, including, among other actions, requiring passwords to access computer systems and databases, restricting access to secured shared files, and requiring employees who are provided access to the confidential and proprietary information, to sign written agreements that contain non-disclosure, return of information, non-solicitation, and non-competition obligations.

4

**The Agreement**

25.     The Agreement provides the following regarding confidential and proprietary

information:

> Section 1 Company Proprietary Information. Employee recognizes and
> acknowledges that the list of Employer's accounts, customers, and vendors along
> with all information, knowledge and data connected with or related to the
> Employer, including, without limitation, Employer's commission structure, method
> of sales, price and cost structure and policies, procedure and/or operating manuals
> along with all techniques, methods, systems, methodologies, facts, financial data
> and other data, or other practice and operating records, of whatever kind and
> whatever form, as they exist from time to time, are a valuable, special, and unique
> asset of Employer's business ("Proprietary Information"). Employee will not,
> purposely or negligently, during or after the term of employment, disclose the
> proprietary information, or any part thereof, to any person, firm, corporation,
> association, practice or other entity for any reason or purpose whatsoever, other
> than to an employee of Employer who has a bona fide need for access to such
> information.  Employee further agrees that the provisions of this Section 1 shall
> survive the termination or cancellation of this Agreement or of the Employee's
> employment with Employer.

(Exhibit 2, p. 1.)

26.     The Agreement also requires the return of the Company's confidential and

proprietary information, providing:

> Section 2 Return of Information. Upon Employer's request or Employee's
> termination of employment, Employee hereby agrees to return to Employer's
> possession all Proprietary Information or other material in employee's possession
> or under Employee's control which may contain or be derived from Proprietary
> Information together with all documents, notes, or other work product which is
> connected with or derived from Employee's services to Employer, whether or not
> such material is at the date hereof in Employee's possession. Employee agrees that
> she/he shall have no proprietary interests in any work product developed or used
> by Employee and arising out of employment with Employer.

(*Id.*)

27.     The Agreement further provides the following regarding non-solicitation and non-

competition:

> Section 3 Non-Solicitation.  Both during the term of employment with the
> Employer and thereafter, Employee shall not, either personally or through any
> individual, association, partnership, corporation or entity, prevent or induce, or

5

attempt to prevent or induce, in any manner whatsoever (1) any past, present or prospective customers or vendors of the Employer from seeking sales or service with the Employer; or (ii) any person or entity to refrain from referring any customers or vendors to the Employer for such sales or service. Employee further covenants and agrees that she/he shall not send announcements to advertise or solicit the Employer's customers or vendors to come to her/him or any competitor of the Employer for sales or service, or encourage any employees of the Employer to leave the employment of the Employer and go work for any of the competitors of the Employer within the prescribed time restraints proscribed in Section 4, irrespective of the reasons for which the within relationship with the Employer might terminate.

(*Id.*)

Section 4 Non-Competition.  Employee acknowledges that the Employer, through the years, has established valuable business assets in its customer base, vendor relationships and goodwill throughout the United States. Employee further acknowledges that if she/he were to engage in a business that is in competition with Employer, she/he could erode these business assets of the Employer.  Therefore, Employee covenants and agrees that she/he shall not, during the term of employment and for one year thereafter, directly or indirectly, for herself/himself, or on behalf of, or as an employee of any other person, firm, association, practice, hospital or corporation, or entity engage in or be employed by any surgical and medical instrumentation business or provider which is competitive with the business of Spectrum within the United States.

(*Id*. at p 2.)

28.    The Agreement also provides the following regarding remedies:

Section 6 Remedies.  Employee stipulates and acknowledges that her/his services under this Agreement are of a special and unique character, and that a breach by Employee of this agreement shall cause the Employer irreparable injury and damage.  It is therefore, mutually agreed and stipulated by the parties that, in the event of a breach of this Agreement, the Employer shall be entitled to, in addition to all other remedies available to it, seek a temporary and/or permanent injunction restraining Employee from any further violation or breach of the Agreement, or any part of it, and to secure its enforcement, … without restricting the Employer from other legal and equitable remedies.

(*Id*.)

29.    The Agreement also provides that it "shall be governed by the laws of the State of Ohio."  (*Id*.).

30.     The Agreement further provides for an award of attorneys' fees in the event of a successful suit to enforce it:

> Section 11 Attorneys' Fees.  In the event that the Employer is successful in any suit or proceeding brought or instituted by the Employer to enforce any of the provisions of the within agreement or on account of any damages sustained by the Employer by reason of the violation by Employee of any of the terms and/or provisions of this Agreement to be performed by Employee, Employee agrees to pay the Employer reasonable attorneys' fees to be fixed by the court.

(*Id*. at p 3.)

### Defendant Windham's Resignation, Employment with Aesculap, and Violations of the Agreement

31.     On or about May 6, 2022, Windham gave notice of his voluntary resignation from STERIS.

32.     Windham tearfully advised his manager, Carla Backus, Director, Regional Sales-Healthcare, STERIS, IMS, that he was resigning from STERIS due to personal issues, and he intended to take some time off, and he had no intention of returning to a sales role because he found it to involve too much pressure.

33.     Because Windham led STERIS to believe he was simply leaving the industry, STERIS asked him to remain employed for a few weeks to help with the transition, and his last day of employment with STERIS was May 27, 2022.

34.     Following his departure, in or around mid-June 2022, despite Windham's claim that he did not have subsequent employment lined up and had no intention of returning to a sales role, STERIS learned that Windham began employment with a direct competitor, Aesculap, as a Healthcare Solutions Specialist II.

35.     STERIS learned of Windham's employment with Aesculap when STERIS customers, with whom Windham worked while employed at STERIS, mistakenly used his STERIS email address when replying to emails Windham sent to them from his Aesculap email account.

36.     Upon discovering these emails, STERIS conducted a preliminary review of Windham's STERIS email activity during the month of May 2022, and discovered that Windham forwarded to his personal email account confidential and proprietary information regarding a project he worked on in February 2022 for one of the customers he was now pursuing in connection with his new employment at Aesculap, which project is referenced in the subject line of the June 2022 email thread between Windham at his Aesculap email account and the customer.

37.     STERIS also learned that Windham has also been observed wearing clothing bearing Aesculap's logo at current and prospective STERIS customers that were within his territory while employed at STERIS.

38.     Aesculap is a surgical and/or medical instrumentation business or provider and, thus, Windham's employment with it during his one-year non-competition period is in violation of the Agreement.  Additionally, Windham's active solicitation of current and prospective customers with whom he worked while employed at STERIS is also in violation of the Agreement. Moreover, Windham's conduct in forwarding to his personal email account information regarding a project he was working on while employed at STERIS and then using that information in connection with his employment at Aesculap is in violation of his confidentiality and non-disclosure obligations under the Agreement.

39.     As a result of the foregoing, on or about June 17, 2022, STERIS sent correspondence to Windham reminding him of his post-employment obligations to STERIS and asking that he cease and desist from further violating them, also providing a copy of the same to his new employer, Aesculap.  (Ex. 3, Cease and Desist Letter).

40.     While STERIS received notice that Windham and Aesculap engaged counsel, no assurances were provided that Windham would stop violating his post-employment obligations to STERIS, resulting in this lawsuit.

41.     Prior to the filing of this lawsuit, STERIS undertook further internal investigation to evaluate if Windham engaged in further surreptitious activities beyond those addressed above, discovering that during the last 90 days of his employment with STERIS, he forwarded more than 200 emails, many containing confidential and proprietary information, from his STERIS email account to his personal Gmail account, and subsequently deleted these emails from his STERIS email account.

42.     Windham has taken, retained, and used STERIS' confidential and proprietary information without authorization or permission to unlawfully benefit himself and his new employer, Aesculap, in direct violation of his ongoing post-employment obligations to STERIS.

43.     Upon information and belief, Despite STERIS' efforts to obtain Defendants' voluntary compliance with Windham's ongoing post-employment obligations to STERIS, Defendants continue to violate the same and tortiously interfere with STERIS' contractual and business relationships by (1) employing Windham in violation of the non-competition provision in the Agreement, (2) soliciting STERIS customers with whom he worked while employed at STERIS in violation of the non-solicitation provision in the Agreement, and (3) retaining STERIS' confidential and proprietary information and using the same in connection with his role at Aesculap in violation of the return of information and non-disclosure obligations in the Agreement.

44.     Unless enjoined, Defendants will continue to breach and tortiously interfere with the Agreement and STERIS' business relationships and misappropriate STERIS' trade secret information, causing irreparable harm to STERIS.

## COUNT ONE: REQUEST FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

45.     STERIS incorporates herein by reference all allegations set forth in Paragraphs 1 through 44 as if fully rewritten herein.

46. Federal Civil Rule 65 and the Agreement allow this Honorable Court to issue temporary and preliminary injunctive relief under the circumstances verified in this Complaint.

47. In this case, STERIS submits the specific facts referenced in this Complaint that justify injunctive relief.

48. As detailed in this Verified Complaint, Defendant Windham committed multiple breaches of his Agreement with STERIS, including, but not necessarily limited to, forwarding STERIS' confidential, proprietary, and/or trade secret information to his personal email account while employed by STERIS and using the same in connection with his new employment with Aesculap, actively soliciting current and prospective customers with whom he worked while employed at STERIS, and working for Aesculap during his one-year non-competition period.

49. Further, Windham's unlawful retention and misappropriation of STERIS' confidential, proprietary, and/or trade secret information extends to Defendant Aesculap, a direct competitor of STERIS.

50. As detailed in this Verified Complaint, Defendant Aesculap has tortiously interfered with the Agreement and STERIS' business relationships by employing Windham in violation of the same and acquiescing in his possession, use, and disclosure of STERIS' confidential, proprietary, and/or trade secret information and solicitation of customers with whom he worked while employed at STERIS.

51. As detailed in this Verified Complaint, Defendants have willfully and maliciously engaged in conduct for which STERIS has no adequate remedy at law and faces immediate and irreparable injury, loss, or damage, including but not limited to, STERIS' loss of its confidential, proprietary, and/or trade secret information, the loss of its investment in time and expense in developing the same, the loss of its competitive position, the loss of business goodwill, and the loss of sales. No amount of money could compensate STERIS for these losses.

52.     For these reasons, STERIS is entitled to a temporary restraining order and preliminary injunctive relief, enjoining and restraining Defendants and any other person or entity acting in aid or concert, or in participation with them as follows:

(a)    prohibiting Defendant Windham and any other person or entity acting in aid or concert, or in participation with him, including Aesculap, from retaining, using, or otherwise disclosing STERIS' confidential, proprietary, and/or trade secret information;

(b)    prohibiting Windham and any other person or entity acting in aid or concert, or in participation with him, including Aesculap, from soliciting, servicing, or otherwise offering any competitive products or services to any STERIS customers for a period of one year from the date of the Order;

(c)    prohibiting Windham and any other person or entity acting in aid or concert, or in participation with him, including Aesculap, from encouraging any employee, customer, or vendor to terminate their relationship with STERIS;

(d)    prohibiting Windham from working for Aesculap for a period of one year from the date of the Order;

(e)    prohibiting Windham from engaging in any other conduct that would otherwise violate his Agreement with STERIS; and

(f)    prohibiting Aesculap from interfering with Windham's non-disclosure, non-solicitation, and non-competition obligations under the Agreement.

## COUNT TWO: MISAPPROPRIATION AND USE OF TRADE SECRETS
## UNDER THE DEFEND TRADE SECRETS ACT (DTSA)
### (Against All Defendants)

53.     STERIS incorporates herein by reference all allegations set forth in Paragraphs 1 through 52 as if fully rewritten herein.

54.     The confidential and proprietary information to which Windham was exposed and had access while employed at STERIS, as described in this Verified Complaint, was not publicly known, has been generated and cultivated by STERIS over many years, gives STERIS a substantial competitive advantage over its competitors and constitutes trade secrets within the meaning of 18 U.S.C. §1839(3).

55.     This confidential and proprietary information derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by other persons.

56.     STERIS took reasonable steps to protect its confidential, proprietary, and/or trade secret information, as described in this Verified Complaint.

57.     Upon information and belief, since leaving STERIS and continuing to the present, Windham, without justification or privilege to do so, has willfully and maliciously taken, retained, and misappropriated STERIS' confidential, proprietary, and trade secret information, including, but not limited to, customer information, product specifications, repair and servicing techniques, and pricing information to further his individual business interests and the interests of Defendant Aesculap to unfairly compete with STERIS.

58.     STERIS has no adequate remedy at law to redress these misappropriations of its trade secrets and faces immediate and irreparable injury, loss, or damage as a result of the misappropriation, including, but not necessarily limited to, the loss of the confidentiality of its trade secrets, the loss of its investment in time and expense in developing the same, the loss of its competitive position, the loss of business goodwill, and the loss of sales. STERIS has no adequate remedy at law for these losses and no amount of money could compensate STERIS for these losses.

59.     STERIS is entitled to a temporary restraining order and preliminary and permanent injunctive relief, enjoining, and restraining Windham and any other person or entity acting in aid

or concert, or in participation with him, including Aesculap, as set forth above in Count One of the Verified Complaint.

60.     As a direct and proximate result of Defendants' actions, STERIS has also been damaged in a monetary amount, to be proven at trial, including punitive damages as a result of Windham's willful and malicious conduct, and, further, is entitled to its attorneys' fees and costs associated with this action.

## COUNT THREE: MISAPPROPRIATION AND USE OF TRADE SECRETS UNDER OHIO LAW (OUTSA)
### (Against All Defendants)

61.     STERIS incorporates herein by reference all allegations set forth in Paragraphs 1 through 60 as if fully rewritten herein.

62.     The confidential and proprietary information to which Windham was exposed and had access while employed at STERIS, as described in this Verified Complaint, was not publicly known, has been generated and cultivated by STERIS over many years, gives STERIS a substantial competitive advantage over its competitors and constitutes trade secrets within the meaning of Section 1333.61(D) of the Ohio Revised Code.

63.     This confidential and proprietary information derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by other persons.

64.     STERIS took reasonable steps to protect its confidential, proprietary, and trade secret information, as described in this Verified Complaint.

65.     Upon information and belief, since leaving STERIS and continuing to the present, Windham, without justification or privilege to do so, has willfully and maliciously taken, retained, and misappropriated STERIS' confidential, proprietary, and trade secret information, including, but not limited to, customer information, product specifications, repair and servicing techniques,

and pricing information to further his individual business interests and the interests of Defendant Aesculap to unfairly compete with STERIS.

66.     STERIS has no adequate remedy at law to redress these misappropriations of its trade secrets and faces immediate and irreparable injury, loss, or damage as a result of the misappropriation, including, but not necessarily limited to, the loss of the confidentiality of its trade secrets, the loss of its investment in time and expense in developing the same, the loss of its competitive position, the loss of business goodwill, and the loss of sales.  STERIS has no adequate remedy at law for these losses and no amount of money could compensate STERIS for these losses

67.     STERIS is entitled to a temporary restraining order and preliminary and permanent injunctive relief, enjoining, and restraining Windham and any other person or entity acting in aid or concert, or in participation with him, including Aesculap, as set forth above in Count One of the Verified Complaint.

68.     As a direct and proximate result of Defendants' actions, STERIS has also been damaged in a monetary amount, to be proven at trial, including punitive damages as a result of Windham's willful and malicious conduct, and, further, is entitled to its attorneys' fees and costs associated with this action.

### COUNT FOUR: BREACH OF CONTRACT
### (Against Defendant Windham)

69.     STERIS incorporates herein by reference all allegations set forth in Paragraphs 1 through 68 as if fully rewritten herein.

70.     On February 21, 2011, Windham entered into the Agreement with Spectrum.

71.     The Agreement is binding upon the parties' heirs, executors, administrators, legal representatives, successors and assigns, which includes STERIS.

14

72.     As consideration for the Windham Agreement, Spectrum, and subsequently STERIS, provided Windham continued employment and access to its highly confidential, proprietary, and trade secret information.

73.     In the Agreement, among other things, Windham agreed to maintain the secrecy of the Company's proprietary information, to return any such proprietary information upon his separation from employment, not to solicit customers or vendors to a competitor for sales or service for a period of one year following his separation from employment, and not to "engage in or be employed by any surgical and medical instrumentation business or provider which is competitive with the business of [the Company]...." for a period of one year following his separation from employment.

74.     Windham willfully and maliciously breached the Agreement by, among other actions, forwarding STERIS' proprietary information to his personal email account, not returning the same upon his separation from employment, using project-related information developed while he was employed at STERIS for work he is performing at Aesculap, soliciting customers with whom he worked while employed at STERIS in connection with his new employment at Aesculap, and working for Aesculap, a direct competitor of STERIS.

75.     STERIS has performed all of its obligations under the Agreement and all conditions precedent to the enforcement of the Agreement have been satisfied, waived, or abandoned.

76.     As a direct and proximate result of Windham's multiple and ongoing breaches of the Agreement, STERIS faces the immediate and irreparable loss of its confidential, proprietary, and trade secret information, the loss of its investment in time and expense in developing the same, the loss of its competitive position, the loss of business goodwill, and the loss of sales. STERIS has no adequate remedy at law for these losses and no amount of money could compensate STERIS for these losses.

77.     STERIS is entitled to a temporary restraining order and preliminary and permanent injunctive relief, enjoining, and restraining Windham from further violating his obligations under the Agreement as set forth above in Count One of the Verified Complaint.

78.     As a direct and proximate result of Defendants' actions, STERIS has also been damaged in a monetary amount, to be proven at trial, including punitive damages as a result of Windham's willful and malicious conduct, and, further, is entitled to its attorneys' fees and costs associated with this action.

**COUNT FIVE: TORTIOUS INTERFERENCE**
**WITH CONTRACT AND BUSINESS RELATIONSHIPS**
**(Against All Defendants)**

79.     STERIS incorporates herein by reference all allegations set forth in Paragraphs 1 through 78 as if fully rewritten herein.

80.     Defendant Windham is aware of STERIS' business relationship with customers, prospective customers, and vendors, and without authorization to do so, Windham, as an employee of Aesculap, has contacted STERIS' customers for the purpose of interfering with STERIS' business relationship with them.

81.     Aesculap is aware of Windham's employment with STERIS and post-employment restrictions in the Agreement, and without justification or privilege, has interfered with this contractual and business relationship by employing Windham in a competitive business and allowing him to use STERIS' confidential, proprietary, and trade secret information, and, further, allowing him to solicit and service customers with whom he worked while employed at STERIS, thus unfairly and unlawfully competing against STERIS.

82.     Through their actions, Windham and Aesculap have worked in concert to willfully, maliciously, and intentionally interfere with STERIS' business and contractual relationships.

83.     As a direct and proximate result of Defendants' actions, STERIS faces the immediate and irreparable loss of its confidential, proprietary, and trade secret information, the loss of its investment in time and expense in developing the same, the loss of its competitive position, the loss of business goodwill, and the loss of sales. STERIS has no adequate remedy at law for these losses and no amount of money could compensate STERIS for these losses.

84.     STERIS is entitled to a temporary restraining order and preliminary and permanent injunctive relief, enjoining, and restraining Defendants from further interfering with its business and contractual relationships as set forth above in Count One of the Verified Complaint.

85.     As a direct and proximate result of Defendants' actions, STERIS has also been damaged in a monetary amount, to be proven at trial, including punitive damages as a result of Windham's willful and malicious conduct, and, further, is entitled to its attorneys' fees and costs associated with this action.

## COUNT SIX: CONVERSION
### (Against All Defendants)

86.     STERIS incorporates herein by reference all allegations set forth in Paragraphs 1 through 85 as if fully rewritten herein.

87.     STERIS has, at all relevant times, been the owner of its confidential, proprietary, and trade secret information.

88.     Prior to resigning from his employment with STERIS, Windham forwarded STERIS' confidential, proprietary, and trade secret information from his STERIS email account to his personal Gmail account.

89.     In an attempt to cover his tracks, Windham then deleted the emails from his STERIS account.

90.     Without knowledge or authorization from STERIS, Defendant Windham unlawfully took and converted STERIS' confidential, proprietary, and trade secret information,

knowing that it belonged to STERIS, to further his own and Aesculap's interests and business opportunities to the detriment of STERIS.

91.     After resigning from his employment with STERIS, Windham did not return STERIS' confidential, proprietary, and trade secret information in his possession despite STERIS' request that he do so.  To date, it remains in his possession and he is believed to be using it in connection with his employment with Aesculap.

92.     As a direct and proximate result of Defendants' willful and malicious actions, STERIS faces the immediate and irreparable loss of its confidential, proprietary, and trade secret information, the loss of its investment in time and expense in developing the same, the loss of its competitive position, the loss of business goodwill, and the loss of sales.  STERIS has no adequate remedy at law for these losses and no amount of money could compensate STERIS for these losses.

93.     STERIS is entitled to a temporary restraining order and preliminary and permanent injunctive relief, enjoining, and restraining Defendants from further retaining STERIS' confidential, proprietary, and trade secret information as set forth above in Count One of the Verified Complaint.

94.     As a direct and proximate result of Defendants' actions, STERIS has also been damaged in a monetary amount, to be proven at trial, including punitive damages as a result of Windham's willful and malicious conduct, and, further, is entitled to its attorneys' fees and costs associated with this action.

## COUNT SEVEN:  UNJUST ENRICHMENT
### (Against All Defendants)

95.     STERIS incorporates herein by reference all allegations set forth in Paragraphs 1 through 94 as if fully rewritten herein.

96.     By Aesculap employing Windham and allowing him to work in the same territory he worked while employed at STERIS and to solicit the customers and prospects with whom he worked while employed by STERIS, and by Windham using STERIS' confidential, proprietary, and trade secret information to compete with STERIS and to take away business from STERIS, Defendants have been unjustly enriched.

97.     STERIS has suffered and will continue to suffer damage as a result of these actions.

98.     STERIS is entitled to any profits obtained by Defendant as a result of Windham's employment and use of STERIS' confidential, proprietary, and trade secret information, as well as punitive damages, attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, STERIS respectfully requests that this Court enter judgment in its favor and against Defendants on the Complaint as follows:

1.     That this Court enter a temporary restraining order, preliminary injunction, and permanent injunction:

> (a).     prohibiting Defendant Windham and any other person or entity acting in aid or concert, or in participation with him, including Aesculap, from retaining, using, or otherwise disclosing STERIS' confidential, proprietary, and/or trade secret information;

> (b).     prohibiting Windham and any other person or entity acting in aid or concert, or in participation with him, including Aesculap, from soliciting, servicing, or otherwise offering any competitive products or services to any STERIS customers for a period of one year from the date of the Order;

(c). prohibiting Windham and any other person or entity acting in aid or concert, or in participation with him, including Aesculap, from encouraging any employee, customer, or vendor to terminate their relationship with STERIS;

(d). prohibiting Windham from working for Aesculap for a period of one year from the date of the Order;

(e). prohibiting Windham from engaging in any other conduct that would otherwise violate his obligations under the Agreement; and

(f). prohibiting Aesculap from interfering with Windham's obligations under the Agreement.

2. That this Court require Windham and any other person or entity acting in aid or concert, or in participation with him, including Aesculap, to immediately return all of STERIS' property, keeping no copy;

3. That this Court require Defendants to provide an accounting of all profits, compensation, commissions, remuneration, and other benefits Defendants have obtained as a result of Windham's employment with Aesculap;

4. That STERIS be awarded compensatory and punitive damages in an amount to be proven at trial, including but not limited to, including any pre- and post-judgment interest;

5. That STERIS be awarded its reasonable attorneys' fees and costs;

6. Such other relief in STERIS' favor that the Court deems just and proper under the circumstances of this case.

## **VERIFICATION**

I, Carla Backus, state and declare that I am employed by STERIS Instrument Management Services, Inc., as Director, Regional Sales-Healthcare, and based upon information either known by me or available to me, verify the facts recited in the foregoing *Verified Complaint for Temporary Restraining Order, Preliminary Injunction, Permanent Injunction, and Other Relief* are true and accurate to the best of my knowledge, except those stated upon information or belief, which I believe to be true and accurate.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on __7 . 1 9 . 22__
              DATE

Carla A. Backus
CARLA BACKUS

21

Respectfully submitted,

ZASHIN & RICH CO., L.P.A.

*s/ Natalie M. Stevens*
Natalie M. Stevens (0079963)
nms@zrlaw.com
Brittany A. Mallow (0100928)
bam@zrlaw.com
950 Main Avenue, 4th Floor
Cleveland, OH 44113
T: (216) 696-4441
F: (216) 696-1618

Drew C. Piersall (0078085)
17 South High Street, Suite 900
Columbus, OH 43215
T: (614) 224-4411
F: (614) 224-4433
dcp@zrlaw.com

*Attorneys for Plaintiff*
*STERIS Instrument Management Services, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on, July 19, 2022, a copy of the foregoing *Verified Complaint for Temporary Restraining Order, Preliminary Injunction, Permanent Injunction, and Other Relief* was sent by email to the following:

David J. Clark
875 Third Avenue
New York, NY 10022
Ph: 212.351.3772
Fax: 212.878.8600
DClark@ebglaw.com

*Counsel for Defendants Marc Windham and Aesculap, Inc.*

*s/ Natalie M. Stevens*
*One of the Attorneys for Plaintiff STERIS*
*Instrument Management Services, Inc.*

23